**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LESLIE WOODS,
    *Plaintiff-Appellant*,

v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,
    *Defendant-Appellee.*

No. 21-35458

D.C. No.
3:20-cv-00805-
BR

OPINION

Appeal from the United States District Court
for the District of Oregon
Anna J. Brown, District Judge, Presiding

Submitted March 8, 2022[*]
Seattle, Washington

Filed April 22, 2022

Before: Jacqueline H. Nguyen, Eric D. Miller, and
Patrick J. Bumatay, Circuit Judges.

Opinion by Judge Nguyen

---

[*] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

# SUMMARY[**]

## Social Security

The panel affirmed the district court's decision affirming the Commissioner of Social Security's denial of claimant's application for benefits under the Social Security Act based on various physical and mental impairments.

As a threshold matter, the panel held that recent changes to the Social Security Administration's regulations displaced longstanding case law requiring an administrative law judge ("ALJ") to provide "specific and legitimate" reasons for rejecting an examining doctor's opinion. For claims filed on or after March 27, 2017, that are subject to the new regulations, the former hierarchy of medical opinions – in which the court assigned presumptive weight based on the extent of the doctor's relationship with the claimant – no longer applies. While the panel agreed with the government that the "specific and legitimate" standard was clearly irreconcilable with the 2017 regulations, the panel held that the extent of the claimant's relationship with the medical provider – the "relationship factors" – remained relevant under the new regulations. An ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. However, the ALJ no longer needs to make specific findings regarding those relationship factors. Even under the

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.

Here, the ALJ acknowledged Dr. Causeya's opinion that the claimant had marked and extreme limitations in various cognitive areas, including memory and concentration; but the ALJ found this opinion unpersuasive because it was inconsistent with the overall treating notes and mental status exams in the record. The panel held that substantial evidence supported the ALJ's inconsistency finding.

The panel rejected claimant's contention that the ALJ failed to consider all her physical and mental limitations that are supported by the record. Because substantial evidence supported the ALJ's decision here, the panel affirmed.

---

**COUNSEL**

George Joseph Wall, Law Offices of George J. Wall, Portland, Oregon, for Plaintiff-Appellant.

Willy Le, Acting Regional Chief Counsel, Seattle Region X; Jeffrey E. Staples, Assistant Regional Counsel; Office of General Counsel, Social Security Administration, Seattle, Washington; Scott Erik Asphaug, United States Attorney; Renata Gowie, Civil Division Chief; United States Attorney's Office, Portland, Oregon; for Defendant-Appellee.

**OPINION**

NGUYEN, Circuit Judge:

Leslie Woods seeks benefits under the Social Security Act based on various physical and mental impairments. An administrative law judge ("ALJ") found that she was not disabled and denied her claim. The district court affirmed.

As a threshold matter, we must decide whether recent changes to the Social Security Administration's regulations displace our longstanding case law requiring an ALJ to provide "specific and legitimate" reasons for rejecting an examining doctor's opinion. We conclude that they do. For claims subject to the new regulations, the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies. Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence. Because substantial evidence supports the ALJ's decision here, we affirm.

**I.**

Woods applied for disability insurance benefits and supplemental security income in July 2017. *See* 42 U.S.C. §§ 423, 1381a, 1395i-2a. The agency denied her claim initially and on reconsideration. Following a hearing on Woods's administrative appeal, the ALJ determined that she was not disabled.

At step two of the analysis,[1] the ALJ concluded that Woods had two severe impairments: cervical degenerative disc disease and osteoarthritis involving the hip and knees. The ALJ concluded that Woods's other reported impairments—including small fiber neuropathy, anterior tibialis tendonitis of the right leg, venous insufficiency, carpal tunnel syndrome, obesity, hypertension, depression, and anxiety—were not severe. In reaching this conclusion, the ALJ rejected the opinion of Dr. Karla Rae Causeya, a psychologist who examined Woods and assessed her ability to work. Dr. Causeya evaluated Woods to have "marked and extreme limitations in a number of areas of understanding, remembering or applying information, interacting with

---

[1] The recent changes to the Social Security regulations did not affect the familiar "five-step sequential evaluation process." 20 C.F.R. § 404.1520(a)(1) (disability insurance benefits); *see also id.* § 416.920(a)(4) (same standard for supplemental security income). This process ends when the ALJ can make a finding that the claimant is or is not disabled. *Id.* § 404.1520(a)(4). At the first step, a claimant "doing substantial gainful [work] activity" is not disabled. *Id.* § 404.1520(a)(4)(i). At the second step, a claimant is not disabled unless she has a "medically determinable physical or mental impairment" or combination of impairments that is severe and either lasts at least a year or can be expected to result in death. *Id.* § 404.1520(a)(4)(ii); *see also* 42 U.S.C. §§ 423(d)(1), 1382c(a)(3)(C)(i). At the third step, a claimant is disabled if the severity of her impairments meets or equals one of various impairments listed by the Commissioner of Social Security, 20 C.F.R. pt. 404, subpt. P, app. 1. *See* 20 C.F.R. § 404.1520(a)(4)(iii). At the fourth step, a claimant is not disabled if her residual functional capacity allows her to perform her past relevant work. *Id.* § 404.1520(a)(4)(iv). At the fifth step, a claimant is disabled if, given her residual functional capacity, age, education, and work experience, she cannot make an adjustment to other work that "exists in significant numbers in the national economy," *id.* § 404.1560(c)(2). *See id.* § 404.1520(a)(4)(v).

others, concentrating, persisting and maintaining pace, and adaptation."

At step four of the analysis, the ALJ concluded that Woods had the residual functional capacity to perform "light work" with minor limitations. Based on this finding, the ALJ found that Woods could perform her past relevant work as a cosmetologist and hairstylist.

The Appeals Council denied review of the ALJ's decision. Woods then sought judicial review. The district court, reviewing the ALJ's decision, affirmed the agency's denial of benefits.

## II.

We have jurisdiction under 28 U.S.C. § 1291. We review the district court's order affirming the ALJ's denial of social security benefits de novo, and we will not overturn the Commissioner's decision "unless it is either not supported by substantial evidence or is based upon legal error." *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). Under the substantial-evidence standard, we look to the existing administrative record and ask "whether it contains 'sufficient evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial" means "more than a mere scintilla" but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison*, 305 U.S. at 229). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## III.

Woods contends that the ALJ improperly rejected the opinion of her examining physician, Dr. Causeya, that she has memory and concentration impairments. The ALJ found that Dr. Causeya's opinion conflicted with evidence from other medical sources. But before turning to the merits of this claim, we must first resolve the parties' dispute over the applicable legal standard.

Woods argues that the ALJ erred in rejecting Dr. Causeya's opinion by failing to provide "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1996). The government counters that changes to the Social Security regulations in 2017 "eliminate any semblance of a hierarchy of medical opinions and state that the agency does not defer to any medical opinions, even those from treating sources." We agree with the government.

## A.

For nearly 40 years, we have weighed medical opinions based on the extent of the doctor's relationship with the claimant.[2] We categorized these relationships in a three-

---

[2] Although we refer to doctors for convenience, our discussion applies to evidence from any "acceptable medical source," which includes medical professionals other than physicians, such as psychologists and certain advanced practice nurses and physician assistants. *See* 20 C.F.R. § 404.1502(a)(2), (7), (8); *see also id.* § 404.1527(a)(1) (former regulation defining "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s)"); *id.* § 404.1521 (current regulation requiring "objective medical evidence from an acceptable medical source").

tiered hierarchy. *See Smith v. Kijakazi*, 14 F.4th 1108, 1114 (9th Cir. 2021). At the top are treating physicians. These medical sources treat or evaluate the claimant and have an ongoing treatment relationship with her. *See* 20 C.F.R. § 404.1527(a)(2); *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1036–38 (9th Cir. 2003).

A treating physician's opinion is entitled to "substantial weight," *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)), and we generally give it "more weight . . . than . . . the opinion of doctors who do not treat the claimant," *Lester*, 81 F.3d at 830. This deference "is based not only on the fact that [a treating physician] is employed to cure but also on [the physician's] greater opportunity to observe and know the patient as an individual." *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983) (quoting *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983)); *see also* 20 C.F.R. § 404.1527(c)(2) ("[Y]our treating sources . . . are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . .").

In the middle tier are doctors who examine the claimant but do not have an ongoing relationship with her. "The opinion of an examining physician is . . . entitled to greater weight than the opinion of a nonexamining physician." *Ford*, 950 F.3d at 1155 (quoting *Lester*, 81 F.3d at 830); *see* 20 C.F.R. § 404.1527(c)(1).

To reject either a treating or an examining physician's opinion, an ALJ must provide "clear and convincing reasons," if the opinion is uncontradicted by other evidence, or "specific and legitimate reasons" otherwise, and the

reasons must be supported by substantial evidence.  *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

The lowest-weighted tier comprises "physicians who only review the record."  *Benton*, 331 F.3d at 1036.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician."  *Lester*, 81 F.3d at 831.

**B.**

The new regulations apply to Woods because she filed her claim on or after March 27, 2017.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404 & 416).  We must therefore decide whether, as Woods argues, "the 'specific and legitimate' standard still applies under the new rules."

Our precedent controls unless its "reasoning or theory . . . is clearly irreconcilable with the reasoning or theory of intervening higher authority," which in this case is the agency's updated regulations.  *Lambert v. Saul*, 980 F.3d 1266, 1274 (9th Cir. 2020) (quoting *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc)).  While we agree with the government that the "specific and legitimate" standard is clearly irreconcilable with the 2017 regulations, the extent of the claimant's relationship with the medical provider—what we will refer to as "relationship factors"—remains relevant under the new regulations.

**1.**

The Social Security Act provides no guidance as to how the agency should evaluate medical evidence. It merely directs the Commissioner of Social Security "to make findings of fact" and discuss "the evidence . . . and the reason or reasons upon which [any unfavorable decision] is based." 42 U.S.C. §§ 405(b)(1), 1383(c)(1)(A). And it provides that the Commissioner's "findings . . . as to any fact . . . shall be conclusive" on judicial review "if supported by substantial evidence." *Id.* § 405(g).

The Commissioner has wide latitude "to make rules and regulations and to establish procedures . . . to carry out [the statutory] provisions," in particular regulations governing "the nature and extent of the proofs and evidence . . . to establish the right to benefits." *Id.* § 405(a); *see Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) (observing that the agency has "exceptionally broad authority" to promulgate evidentiary rules, which therefore may be set aside only if they exceed the agency's statutory authority or are arbitrary and capricious).[3] The statute directs the claimant to furnish whatever "medical and other evidence of [disability]" the Commissioner "may require," and it directs the Commissioner to consider "[o]bjective medical evidence of

---

[3] In this case, the issue is one of adherence to our own precedent rather than deference to the agency. Woods does not argue that the 2017 regulations exceed the agency's statutory authority or are arbitrary and capricious. *See Yuckert*, 482 U.S. at 145. Whether our caselaw is clearly irreconcilable with the 2017 regulations is not a question entrusted to the agency's expertise. *See Acosta v. Gonzales*, 439 F.3d 550, 553 n.4 (9th Cir. 2006) ("[A]n agency is not owed deference when the issue is the interpretation of Circuit law rather than the statute."), *overruled on other grounds by Garfias-Rodriguez v. Holder*, 702 F.3d 504, 514 (9th Cir. 2012) (en banc).

pain or other symptoms established by medically acceptable clinical or laboratory techniques." 42 U.S.C. § 423(d)(5)(A). Beyond that, how to evaluate the evidence is up to the agency.

The agency formalized the prior rule emphasizing relationship factors in 1991, *see* Standards for Consultative Examinations and Existing Medical Evidence, 56 Fed. Reg. 36,932 (Aug. 1, 1991), but the rule's genesis was a series of court decisions. *See id.* at 36,934 ("[T]he majority of the circuit courts generally agree on two basic principles. First . . . [,] treating source evidence tends to have a special intrinsic value . . . . Second . . . [,] if the [Commissioner] decides to reject such an opinion, he should provide the claimant with good reasons for doing so. We have been guided by these principles in our development of the final rule."); *see also* Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 Fed. Reg. 62,560, 62,572 (Sept. 9, 2016) (explaining that the agency promulgated the 1991 rule "to create a uniform national policy about how to consider medical opinions from treating physicians").

One of those decisions was *Murray*, where we joined the Second, Fifth, and Sixth Circuits "in giving greater weight to the opinions of treating physicians." *Murray*, 722 F.2d at 501 (citing *Bowman*, 706 F.2d at 568 & n.3; *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *McLaughlin v. Sec'y of Health, Educ. & Welfare*, 612 F.2d 701, 705 (2d Cir. 1980)). In accordance with that principle, *Murry* established the "specific and legitimate" standard: "If the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Id.* at 502.

Under the 1991 rule, an ALJ gives "more weight to the medical opinion of a source who has examined [the claimant] than to the medical opinion of a medical source who has not examined [her]."  20 C.F.R. § 404.1527(c)(1). In addition, the ALJ gives "more weight to medical opinions from [the claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [her] medical impairment(s)."  *Id.* § 404.1527(c)(2).

**2.**

The agency revised the rules for evaluating medical evidence in 2017 to resolve several "adjudicative issues." Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 Fed. Reg. at 62,572.  To begin with, ALJs often needed "to make a large number of findings" to avoid a remand for "failure to weigh properly one of the many medical opinions in a record."  *Id.*  Courts sometimes "focused more on whether [the agency] sufficiently articulated the weight [it] gave treating source opinions rather than on whether substantial evidence supports the Commissioner's final decision."  *Id.*  The agency also had concerns that "the treating physician rule's built-in evidentiary bias in favor of treating physicians may influence treating sources to favor a finding of disabled."  *Id.* at 62,572–73 (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832 (2003)).

In addition, the agency disagreed with our practice of "combin[ing] the treating physician rule with [our] credit-as-true rule" whereby we sometimes remanded with an order to award benefits if the ALJ provided insufficient reasons for rejecting a treating source opinion.  *Id.* at 62,573.  This practice "prevent[ed] [the agency] from reconsidering the

evidence in the record as a whole and correcting any errors." *Id.*

Lastly, the agency expressed doubts about "the presumption that a claimant's sole treating physician generally has the longitudinal knowledge and a unique perspective about his or her patient's impairments that objective medical evidence alone cannot provide." *Id.* The agency found this presumption "less persuasive" than it had been 25 years earlier due to "changes in the national healthcare workforce and in the manner in which many people now receive primary medical care." *Id.*

Under the revised regulations, "there is not an inherent persuasiveness to evidence from [government consultants] over [a claimant's] own medical source(s), and vice versa." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5844. "The most important factors" that the agency considers when evaluating the persuasiveness of medical opinions are "supportability" and "consistency." 20 C.F.R. § 404.1520c(a). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." *Id.* § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* § 404.1520c(c)(2).

The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id.* § 404.1520c(c)(3). Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has

examined the claimant or merely reviewed the claimant's records. *Id.* § 404.1520c(c)(3)(i)–(v). However, the ALJ no longer needs to make specific findings regarding these relationship factors:

> [W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions . . . in your determination or decision. We *may, but are not required to*, explain how we considered the [relationship] factors . . . when we articulate how we consider medical opinions . . . in your case record.

*Id.* § 404.1520c(b)(2) (emphasis added).

A discussion of relationship factors may be appropriate when "two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same." *Id.* § 404.1520c(b)(3). In that case, the ALJ "will articulate how [the agency] considered the other most persuasive factors." *Id.* Other factors include relationship factors, *id.* § 404.1520c(c)(3), whether the medical source's opinion concerns "medical issues related to his or her area of specialty," *id.* § 404.1520c(c)(4), and any "other factors that tend to support or contradict [the] medical opinion," *id.* § 404.1520c(c)(5).

### 3.

The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any

specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must "articulate . . . how persuasive" it finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability and consistency factors" in reaching these findings, *id.* § 404.1520c(b)(2).

## C.

Here, the ALJ acknowledged Dr. Causeya's opinion that Woods has marked and extreme limitations in various cognitive areas, including memory and concentration. The ALJ found this opinion unpersuasive because it was inconsistent with the overall treating notes and mental status exams in the record.[4] Substantial evidence supports the ALJ's inconsistency finding.

---

[4] The ALJ described Dr. Causeya's opinion as "not supported by" the record, but the ALJ plainly did not intend to make a supportability

The ALJ pointed to Dr. Mischelle McMillan's February 2018 observation that Woods's "[c]ognition and memory are normal." The ALJ also noted the inconsistency between Dr. Causeya's opinion that Woods cannot obtain or maintain gainful employment and "the fact that [Woods's] income has not significantly declined since her alleged onset date" despite her having "the additional duties of caring for . . . a [13-year-old] and dealing with her [80-year-old] mother's medical issues."

The evidence on which Woods relies does not show that she has severe difficulties in attention, concentration, or memory. For example, on five occasions in 2018, Nurse Practitioner Anne Pollock assessed Woods to have good or fair attention and concentration and normal memory.

Most of the psychological evidence that Woods cites is treatment notes from Licensed Professional Counselor Heidi Bermeosolo. These treatment notes do not discuss Woods's attention, concentration, or memory at all. Rather, they concern, as the ALJ summarized, "situational stressors that cause [Woods] distress," such as Woods's "fight[s] with [the] granddaughter" whom Woods was raising and Woods's "mother's health." Although Bermeosolo checked a box on a letter to Woods's attorney indicating that she concurred with Dr. Causeya's psychological assessment, Bermeosolo's concurring opinion is wholly unexplained and

---

finding. Dr. Causeya supported her opinion with "relevant . . . objective medical evidence and supporting explanations," 20 C.F.R. § 404.1520c(c)(1), and the ALJ did not suggest otherwise. Rather, the ALJ meant only that Dr. Causeya's opinion was inconsistent with other record evidence. Although the ALJ's meaning here is clear from context, to avoid confusion in future cases, ALJs should endeavor to use these two terms of art—"consistent" and "supported"—with precision.

thus unsupported.  The ALJ reasonably rejected it.  *See Ford*, 950 F.3d at 1155.

## IV.

Woods also contends that the ALJ failed to consider all her physical and mental limitations that are supported by the record.  In assessing Woods's residual functional capacity, the ALJ was required to "consider all of [her known] medically determinable impairments . . . , including [those] that are not 'severe.'"  20 C.F.R. § 404.1545(a)(2).

## A.

The ALJ found that Woods can perform "light work" with frequent balancing, stooping, crouching, crawling, and reaching overhead, but only occasional climbing.  In general, light work "requires a good deal of walking or standing" and "frequent lifting or carrying of objects weighing up to 10 pounds" but "no more than 20 pounds at a time." 20 C.F.R. § 404.1567(b).

Woods asserts that the ALJ "[did] not consider the evidence that prolonged standing exacerbates the pain and swelling in [her] legs and feet."  To the contrary, the ALJ acknowledged her testimony that "if she works too much one day, she is down for . . . 3 or 4 days" as well as her statement to a family nurse practitioner that she "had to space . . . out" her three daily clients.  The ALJ reasonably discounted Woods's "statements concerning the intensity, persistence and limiting effects" of her pain and swelling as "not entirely consistent with the medical evidence and other evidence in the record."

Nor did the ALJ limit his consideration, as Woods suggests, to her own subjective statements about her

physical impairments. For example, the ALJ addressed the opinion of Certified Nurse Practitioner Lindsay McGinnis that Woods should not stand or walk for more than four hours in a workday and needs to sit for 30 minutes every two hours. McGinnis expressed these limitations on a fill-in-the-blank questionnaire from Woods's attorney. The ALJ found McGinnis's opinion "not persuasive because it is not supported by any explanation" or "pertinent exam findings."

The ALJ also found McGinnis's opinion "inconsistent with the objective treating record, exam findings and imaging," as well as Woods's "work activities combined with her parenting and other activities." In particular, the ALJ cited the "fairly benign" results of an MRI examining Woods's cervical spine and the "very conservative[]" treatment of her symptoms—"mostly with medication alone until she received a left knee injection in December of 2018." Substantial record evidence supports these findings.

**B.**

Woods faults the ALJ for including no mental limitations in her residual functional capacity because, she asserts, her psycho-diagnostic evaluation and two years of mental health treatment records document problems with mood, anxiety, memory, and concentration. The ALJ was required to "assess the nature and extent of [her] mental limitations and restrictions" and whether they "reduce [her] ability to do past work and other work." 20 C.F.R. § 404.1545(c).

The ALJ considered Woods's mental health records and assessed her mental functioning in four broad areas known as the "paragraph B" criteria. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00.A.2.b. The ALJ found that Woods had "mild limitation[s]" in two of the criteria—"understanding, remembering, or applying information" and "concentrating,

persisting, or maintaining pace." The ALJ found that Woods had "no limitation[s]" in the other two paragraph B criteria—"interacting with others" and "adapting or managing oneself." The ALJ's assessment of her residual functional capacity expressly reflected these limitations.

Woods does not identify any particular evidence that the ALJ failed to consider or explain why the record does not support the ALJ's findings regarding her mental functioning. The ALJ considered and reasonably rejected the more severe limitations prescribed by Dr. Causeya. As for Woods's remaining treatment record, the ALJ characterized it as "not reflect[ing] any significant complaints of mental health symptoms." This characterization is well supported by the record.

**AFFIRMED.**