FILED

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

DEC 27 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| VICKY L. FRYER, | No. 21-36004 |
| Plaintiff-Appellant, | D.C. No. 3:20-cv-05394-TLF |
| v. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | MEMORANDUM* |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Western District of Washington
Theresa Lauren Fricke, Magistrate Judge, Presiding

Argued and Submitted October 18, 2022
Portland, Oregon

Before:  PAEZ and BADE, Circuit Judges, and R. COLLINS,** District Judge.
Dissent by Judge BADE.

Vicky Fryer ("Fryer") appeals the district court's judgment affirming the

Commissioner of Social Security's denial of her application for disability

insurance benefits under Title II of the Social Security Act.  On appeal, Fryer

---

\*       This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*       The Honorable Raner C. Collins, United States District Judge for the District of Arizona, sitting by designation.

argues that the ALJ improperly evaluated the medical opinion evidence and her testimony regarding her pain symptoms. We have jurisdiction under 28 U.S.C. § 1291 and review de novo. *Ford v. Saul*, 950 F.3d 1141, 1153-54 (9th Cir. 2020) (citations omitted). We affirm in part, reverse in part, and vacate and remand for further proceedings.

1. ***Medical Opinion Evidence***: Because Fryer's claim was filed on September 14, 2017, it is subject to the Social Security Administration's revised regulations for the evaluation of medical opinion evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404 & 416). Under the revised rules, "'[t]he most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(a)). "[A]n ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 787.

The ALJ's decision to partially discredit the opinion of Fryer's examining physician, Dr. Derek Leinenbach, is supported by substantial evidence. Dr. Leinenbach's opinion that Fryer had an overhead reaching limitation on her left side was not supported by the "objective medical evidence," as Fryer's physical examination showed that she had a normal range of motion in her left shoulder.

*Woods*, 32 F.4th at 791-92 (citing § 404.1520c(1)).  Nor was Dr. Leinenbach's opinion consistent with other evidence from Fryer's claim.  *Id.* at 792 (citing § 404.1520c(c)(2)).  Significantly, Fryer failed to report shoulder pain to her healthcare providers or seek additional treatment for such pain—in contrast, she frequently reported and sought treatment for other kinds of body pain she experienced.  The ALJ did not err in discrediting Dr. Litman's opinion on these grounds.  *See* § 404.1520c(b)(2) (stating that ALJs must "explain how [they] considered the supportability and consistency factors," and "may, but are not required to," explain how they considered other factors).

The ALJ also had substantial evidence to fully discredit the opinion of Fryer's examining psychologist, Dr. Jack Litman.  Dr. Litman concluded that he "tend[ed] to believe" Fryer's statement that she could no longer work because she appeared "fairly physically deconditioned," and she was "wary and pain avoidant" of exposure to physical reconditioning.  The objective findings from Dr. Litman's examination do not support his opinion that Fryer could not work.  Indeed, Dr. Litman found that Fryer's cognitive ability was reasonably good, and he did not suggest that her mental health conditions impeded her work abilities.  Dr. Litman's conclusory assertion that Fryer was "physically deconditioned" was inconsistent with the relatively benign findings from her physical examination.  The ALJ did not err in discrediting Dr. Litman's opinion on these grounds.

2. **_Fryer's Symptom Testimony_**: The ALJ's reasons for discrediting Fryer's testimony about her pain symptoms and related limitations were not supported by substantial evidence. The ALJ found that Fryer had produced evidence of impairments that could reasonably be expected to produce her symptoms. The ALJ did not find that Fryer was malingering; therefore he could "reject [her] testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." _Tommasetti v. Astrue_, 533 F.3d 1035, 1039 (9th Cir. 2008) (citing _Smolen v. Chater_, 80 F.3d 1273, 1281, 1283-84) (internal citations omitted)).

Fryer testified that, due to her chronic pain, she was unable to walk for more than a few blocks, sit for long periods of time, and perform routine household tasks, such as lifting a gallon of milk with one hand. In rejecting this testimony, the ALJ explained that Fryer's testimony was inconsistent with "[t]he observations of mostly normal strength and ambulation, the limited observations of pain behavior, and the routine and conservative course of treatment." The ALJ also found Fryer's alleged symptoms and limitations inconsistent with her reported daily activities. Several of these findings were not supported by substantial evidence.

First, the ALJ erred by concluding that there were "limited observations of pain behavior" in Fryer's medical records. From 2016 to 2018, multiple healthcare

4

providers observed that Fryer was in pain, had difficulty walking and exhibited a limited range of motion. This basis for the ALJ's adverse credibility finding is not supported by substantial evidence.

Second, the ALJ erred in discrediting Fryer's testimony based on her routine and conservative treatment for "fibromyalgia and other medical conditions." Fryer tried a variety of pain medications to treat her fibromyalgia, including muscle relaxers, narcotics, and anti-inflammatories, but she often experienced negative side effects and could not continue treatment. She also underwent massages, chiropractic care, acupuncture, physical therapy, and TENs treatment. There is no indication that the treatments she took relieved her pain. *Cf. Tommasetti*, 533 F.3d at 1040 (noting that the claimant had "responded favorably" to conservative treatments). Notably, the ALJ did not identify or explain other fibromyalgia treatments that Fryer could have tried. In previous cases, we have indicated that epidural steroid injections might serve as a nonconservative treatment for fibromyalgia. *See Revels v. Berryhill,* 874 F.3d 648, 667 (9th Cir. 2017). But Fryer's medical records indicate that she was not a candidate for injections because her hemoglobin levels were not sufficiently controlled. Considering the record as a whole, Fryer's purportedly "minimal treatment regime is not a proper basis for finding [her] non-credible." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (explaining that a conservative treatment for pain "is

5

not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment").

Third, the ALJ erred in finding Fryer's symptom testimony inconsistent with her daily activities. The limited activities Fryer reported doing, including grocery shopping with her husband, cooking simple meals, watching television, and spending time with family, are all consistent with the pain symptoms she described. The ALJ offers no explanation why a person who experiences chronic pain and limited mobility would be unable to engage in errands and light housework. To the contrary, "[w]e have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing little more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). The ALJ also overlooked Fryer's statements that she received help from her husband or other family members when engaging in any such daily activities.

As to Fryer's ability to perform housework, the ALJ found Fryer's testimony that her husband performed most housework "inconsistent" with the fact that her

6

husband "is a disabled veteran suffering from physical and mental disability."[1]

This inference is unreasonable. Although an ALJ is "entitled to draw inferences logically flowing from the evidence," the record contains no information about the nature of Fryer's husband's disability. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). There is insufficient record evidence to support the ALJ's findings about Fryer's husband's capabilities. This basis for the adverse credibility finding is not supported by substantial evidence.

To be sure, the ALJ's analysis of Fryer's credibility was not entirely erroneous. The ALJ properly rejected Fryer's testimony about why she stopped working in 2017 based on "internal contradictions in her testimony" and "inconsistencies . . . between [her] testimony and . . . [her] work record." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792-93 (9th Cir. 1997), as amended on reh'g (Sept. 17, 1997) (citations omitted). The ALJ also correctly pointed out that Fryer's symptom testimony was not entirely supported by the objective findings from her physical examinations.

---

[1] Fryer also argued that the ALJ erred by refusing to consider lay witness statements from her husband. It is an open question whether ALJs are still required to consider lay witness evidence under the revised regulations, although it is clear they are no longer required to articulate it in their decisions. *See Johnson v. Kijakazi*, No. 21-35755, 2022 WL 3998572, at *2 (9th Cir. Sept. 1, 2022) (raising the same issue about the requirements for evaluating lay evidence under the revised rules, and declining to address it). We need not address the issue in this case. It is clear the ALJ evaluated Fryer's husband's function reports, as he references the reports elsewhere in the decision.

But we must reverse an ALJ's decision for error unless "it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti,* 533 F.3d at 1038 (internal quotation marks and citations omitted). We "cannot consider an error harmless unless [we] can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (cleaned up).

We cannot confidently conclude that the ALJ's multiple, material errors with respect to discrediting Fryer's testimony were harmless. Unlike other cases in which we have deemed a minor error in the ALJ's reasoning harmless, here, *most* of the reasons the ALJ gave for finding Fryer non-credible were erroneous. *Cf. Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that the ALJ made one erroneous assumption about the claimant's posture while watching television and it was harmless). These errors "negate the validity of the ALJ's ultimate conclusion." *Id.* at 1197. We are mindful that this case involves pain-related ailments. As we have recognized, there is typically no objective medical support for symptoms involving excess pain, and the claimant's testimony is particularly probative. *See Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) ("Excess pain is, by definition, pain that is unsupported by objective medical findings."); *see also Gonzalez v. Sullivan*, 914 F.2d 1197, 1201

8

(9th Cir. 1990) ("[I]t is the very nature of excess pain to be out of proportion to the medical evidence."). Had the ALJ properly credited Fryer's testimony, the ALJ might well have found that she is disabled.

We reverse and remand for reconsideration of Fryer's symptom testimony consistent with this disposition. We affirm the ALJ's decision with respect to the medical opinion evidence. The parties shall bear their own costs on appeal.

**AFFIRMED in part, REVERSED in part, AND REMANDED for further proceedings.**

No. 21-36004, *Fryer v. Kijakazi*

BADE, Circuit Judge, dissenting:

The substantial evidence threshold "is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Because the record contains evidence that "a reasonable mind might accept as adequate to support" the ALJ's finding that Fryer has the residual functional capacity to perform light work, I respectfully dissent.

I agree with the majority that the ALJ's decision to partially discredit Dr. Leinenbach's opinion and fully discredit Dr. Litman's opinion is supported by substantial evidence. I disagree, however, with the majority's conclusion that the ALJ did not state "clear and convincing reasons" for discrediting Fryer's testimony about the extent of her symptoms. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281, 1283–84 (9th Cir. 1996)).

In a single sentence, the majority acknowledges that the ALJ correctly recognized that Fryer's symptom testimony "was not entirely supported" by the "objective findings from her physical examinations." Those "objective findings" include the opinions of *three* medical professionals, all of whom concluded Fryer

1

could work at the light exertional level. Two medical consultants, Dr. Ulleland and Dr. Irwin, provided physical assessments of Fryer, and both determined that she could work at the light exertional level. And Fryer herself emphasizes the opinion of Dr. Leinenbach because his diagnosis was consistent with Fryer's complaints: he found that she had diabetes, fibromyalgia, lumbago with left sciatica, and other complaints. Even so, Dr. Leinenbach *still* concluded that Fryer could stand or walk for six hours, had no sitting limitations, and could lift ten pounds frequently and twenty pounds occasionally—all of which was inconsistent with the extent of Fryer's alleged limitations. *See Smolen*, 80 F.3d at 1284 (stating that the ALJ must consider physicians' observations regarding functional restrictions caused by the claimant's symptoms).

Additionally, the ALJ found that Fryer's testimony about the reason she stopped working was internally inconsistent and inconsistent with the record evidence. Fryer asserted that her "medical conditions would have prevented her from working in July 2017," and that she had a "history of back pain, diabetes, and fibromyalgia" before she stopped working, but the record, in contrast, revealed that she "did not show reports of significant difficulty engaging in work activities before she stopped working" or "that her physical symptoms worsened around the time she stopped working." Fryer also indicated that she stopped working because the program that administered her position ran out of funding. Thus, the ALJ

2

properly concluded that this evidence suggested "that some of [Fryer's] statements regarding her alleged disability are not entirely reliable." *See Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792–93 (9th Cir. 1997), *as amended on reh'g* (Sept. 17, 1997) (ALJ can weigh a claimant's credibility by considering inconsistencies in testimony or inconsistencies between testimony and work record).

The majority correctly notes that the ALJ made errors along the way; however, I cannot agree with the majority's conclusion that the ALJ erred by discounting Fryer's symptom testimony based on her conservative course of treatment. This court does not make arguments for parties, *Johnson v. City of Grants Pass*, 50 F.4th 787, 806 (9th Cir. 2022), but that is what the majority does here. *See also United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (quotation omitted) (explaining that the court is bound by the principle of party presentation). The assertion that injections were not an appropriate fit for treating Fryer's fibromyalgia is the majority's own argument, not one advanced by Fryer to this court or the district court. But even apart from Fryer's fibromyalgia, the ALJ noted that Fryer received routine and conservative treatment for her other conditions: Fryer never acted on her doctor's referrals to see a diabetes nurse or obtain an evaluation at a spinal center, and her treatment providers did not recommend surgery or more aggressive treatment for her spinal disorder. The ALJ's conclusion that a "routine and conservative course of treatment" was

3

inconsistent with Fryer's allegations "of disabling symptoms and limitations" was supported by substantial evidence. *Tommasetti*, 533 F.3d at 1039–40 (permissible for ALJ to infer that claimant's pain "was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program and did not seek an alternative or more-tailored treatment program after he stopped taking an effective medication due to mild side effects").

The ALJ's errors do not warrant reversal so long as they do not "negate the validity of the ALJ's ultimate [credibility] conclusion" and substantial evidence remains to support the credibility determination. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (alteration in original) (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)). Because the ALJ's remaining reasons for discounting Fryer's symptom testimony satisfy the substantial evidence standard, I would affirm.