NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

DEC 5 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JASON WALDRAM,

Plaintiff-Appellant,

v.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

Defendant-Appellee.

No.   22-35893

D.C. No. 2:21-cv-01495-MAT

MEMORANDUM[*]

Appeal from the United States District Court
for the Western District of Washington
Mary Alice Theiler, Magistrate Judge, Presiding

Submitted October 5, 2023[**]
Seattle, Washington

Before:  WARDLAW and M. SMITH, Circuit Judges, and HINKLE,[***] District
Judge.

Jason Waldram appeals the district court's decision upholding an

---

[*]      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]      The panel unanimously concludes this case is suitable for decision
without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[***]      The Honorable Robert L. Hinkle, United States District Judge for the
Northern District of Florida, sitting by designation.

administrative law judge's ("ALJ") denial of social security disability benefits. Because the parties are familiar with the facts, we do not recount them here, except as necessary to provide context to our ruling. We "will disturb the denial of benefits only if the decision contains legal error or is not supported by substantial evidence." *Terry v. Saul*, 998 F.3d 1010, 1012 (9th Cir. 2021) (quoting *Ford v. Saul*, 950 F.3d 1141, 1153–54 (9th Cir. 2020)). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1.      The ALJ properly weighed the medical opinion of examining psychologist Dr. Gerald Cavenee in determining that Waldram is not disabled within the meaning of the Social Security Act. For applications filed on or after March 27, 2017, "[t]he most important factors that the agency considers when evaluating the persuasiveness of medical opinions are supportability and consistency." *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022) (internal quotation marks omitted); *see also* 20 C.F.R. § 404.1520c(b)(2).

Considering the supportability of Dr. Cavenee's opinion, the ALJ found that although Dr. Cavenee's proposed limitations were "supported by the psychologist's exam," these limitations were "wholly inconsistent with how [Waldram] actually performed." For example, Dr. Cavenee found that Waldram had a moderate limitation on understanding, remembering, and persisting in tasks by following short and simple instructions. But Dr. Cavenee's exam showed that

2

Waldram's thought process, thought content, orientation, perception, memory, fund of knowledge, concentration, insight, and judgment were all within normal limits. Moreover, Waldram scored a 30/30 on a "mental status" exam, which Dr. Cavenee interpreted to mean that Waldram had "no impairment." Therefore, substantial evidence supports the ALJ's determination that the relevant objective medical evidence from Dr. Cavenee's examination did not support his proposed mental limitations. *See Woods*, 32 F.4th at 791–92 ("Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" (citing 20 C.F.R. § 404.1520c(c)(1))).

The ALJ also found that Dr. Cavenee's opinion was "inconsistent with other evidence of record as a whole," because although "[Waldram] received inpatient care in 2019 and 2020 . . . overall, through the longitudinal period at issue, [Waldram] presented unremarkably." For instance, despite Waldram's notable complaints of depression, anxiety, and PTSD, the ALJ found that Waldram's health records showed that he retained his thought process, was attentive, had no memory deficits, and was capable of engaging in discussions with health care providers. The ALJ therefore adequately explained why Dr. Cavenee's medical opinion was inconsistent with evidence from other medical sources. *See Woods*, 32 F.4th at 792 ("Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical

3

sources in the claim.'" (citing 20 C.F.R. § 404.1520c(c)(2))).

Furthermore, the ALJ did not commit legal error in discrediting Dr. Cavenee's opinion. First, a fair consideration of the ALJ's decision shows that the ALJ considered and discredited Dr. Cavenee's opinions regarding Waldram's moderate and marked limitations, and adequately explained the decision to do so. *See Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) (noting that a reviewing court must consider an ALJ's full explanation, not just an isolated part); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (noting that even if a decision is explained "with less than ideal clarity," any error is harmless if the agency's path "may be reasonably discerned."). Second, contrary to Waldram's contention, the ALJ did not discount Dr. Cavenee's opinion because of its "checkbox" format. And even if the ALJ had discredited the medical opinion for this reason, it would not constitute legal error. *See Kitchen v. Kijakazi*, 82 F.4th 732, 740–41 (9th Cir. 2023) ("[W]e have accepted the discounting of a medical opinion set forth in a checkbox form with little to no explanation."). Lastly, the ALJ's recognition that Waldram's hospitalizations for psychiatric care occurred "in the context of substance abuse" was not improper because the ALJ did not rely on Waldram's substance use in determining that he was not disabled. *See, e.g., Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001).

4

Therefore, because the ALJ properly considered and addressed the supportability and consistency of Dr. Cavenee's opinion, and because "considering the record as a whole, a reasonable person" could find that the evidence supported the ALJ's conclusion, the ALJ's decision to discredit Dr. Cavenee's opinions regarding Waldram's mental limitations was supported by substantial evidence. *Terry*, 998 F.3d at 1012.

**AFFIRMED.**