**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

DEC 16 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MONICA MACINA,<br><br>              Plaintiff - Appellant,<br><br>   v.<br><br>CAROLYN W. COLVIN[*], Acting<br>Commissioner of Social Security,<br><br>              Defendant - Appellee. | No. 24-204<br><br>D.C. No.<br>2:23-cv-00699-VCF<br><br>MEMORANDUM[**] |

Appeal from the United States District Court
for the District of Nevada
Cam Ferenbach, Magistrate Judge, Presiding

Submitted December 4, 2024[***]
San Francisco, California

Before: TYMKOVICH[****], M. SMITH, and BUMATAY, Circuit Judges.

---

[*]     Carolyn W. Colvin is substituted for her predecessor Martin O'Malley, Commissioner of the Social Security Administration, as Acting Commissioner of the Social Security Administration, pursuant to Federal Rule of Appellate Procedure 43(c).

[**]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[***]     The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[****]     The Honorable Timothy M. Tymkovich, United States Circuit Judge for the Court of Appeals, 10th Circuit, sitting by designation.

Appellant Monica Macina's claims for disability insurance benefits and supplemental security income were denied by the Social Security Commission. She reported osteoarthritis in her right hip, degenerative disc disease, and depression. She received an administrative hearing in front of an administrative law judge (ALJ), who found her not disabled. She sued, challenging those findings. The district court affirmed the ALJ. Ms. Macina now appeals to us.

We have jurisdiction under 28 U.S.C. § 1291. We **AFFIRM**. The ALJ's findings were supported by substantial evidence, and conflicting medical evidence was properly assessed.

## I. Background

Ms. Macina first complained of hip pain in November 2019. She was encouraged to exercise and manage her diet. In March 2020, Dr. Chantelle Chand referred Ms. Macina for x-rays which found moderately severe degeneration of her right hip. She received a hip injection in June 2020, and reported "fantastic relief" that lasted for a month. In July 2020, she reported that conservative treatment options were not working, and she would like to move forward with hip replacement surgery. In Fall 2020, she was diagnosed with severe degenerative disc disease. She presented with severe degeneration in her L4-5 vertebrae.

In December 2020, Dr. Steven Nishiyama diagnosed her with both degenerative joint disease in her right hip and degenerative disc disease in her

back. She was told that hip replacement was the only "ultimate resolution to her problem." Despite this advice, she decided to continue "conservative" nonoperative treatment.

Her treatment regimen included everything short of surgery. She received opioid pain medication, another shot in her hip, physical therapy, a lumbar branch block, a dorsal ramus block, and radiofrequency ablation treatment. All these treatments caused short-lived relief—with one exception: opioids. Ms. Macina consistently reported that her pain medications, hydrocodone, oxycodone, or oxycodone-acetaminophen, caused 50% reduction in pain and improved mood and quality of life. Despite "having failed several conservative efforts", Ms. Macina refused hip replacement surgery multiple times. She was scared to get the surgery during the pandemic[1] and unsure how her insurance would cover in-home care.

In December 2021, Dr. Chand completed a "Physical Residual Functional Capacity Questionnaire" provided by Ms. Macina's attorney. Dr. Chand painted a dire picture of her patient's health. Dr. Chand believed that Ms. Macina could only lift and carry 10 pounds occasionally and less than 10 pounds frequently; could only sit or stand for 15 minutes at a time; and could only work if she could shift positions at will and take unscheduled breaks throughout the workday. This report contradicted the reports Drs. Hoa-Tuyet Bui and Amanjot Kaur prepared. They

---

[1] Ms. Macina was fully vaccinated against COVID-19.

both found Ms. Macina could lift and carry 20 pounds occasionally and 10 pounds frequently; could sit or stand for six hours in an eight-hour workday; and could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl.

The Social Security Commission denied Ms. Macina's application for disability benefits and affirmed that finding on reconsideration. An ALJ affirmed that finding after a hearing. She found that Ms. Macina had enough residual functional capacity to be employed. The ALJ found Drs. Bui's and Kaur's reports generally persuasive and consistent with the treatment history. She found Dr. Chand's report unpersuasive and inconsistent with the medical records.

## II. Analysis

We review the district court's rulings de novo, *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022), and affirm the ALJ's decision so long as it is supported by substantial evidence and free of legal error. 42 U.S.C. § 405(g); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). Under the current regulations, "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). This bar is not high. *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). We need only find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Ms. Macina's only claim is that the ALJ failed to provide sufficient reasons to reject Dr. Chand's opinion. Ms. Macina claims that the ALJ must consider the doctor's relationship with the claimant, specialization, and other factors. Not so. "'The most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" *Woods*, 32 F.4th at 791 (quoting 20 C.F.R. § 404.1520c(a)). The ALJ only needs to discuss Ms. Macina's other factors if it determines two conflicting medical opinions are "both equally well supported and consistent with the record." 20 C.F.R. § 404.1520c(b)(3) (internal parentheticals removed). The ALJ specifically discredited Dr. Chand's opinion because it was inconsistent with the treatment record. The ALJ's findings were clear:

> The undersigned has considered the opinion(s) of Dr. Chand and finds it unpersuasive (20 CFR 404.1520c and 416.920c). *It is overly restrictive and not supported by the overall treatment record.* While imaging has revealed some relatively significant findings, and hip replacement surgery has been recommended, overall treatment has been rather conservative. Notably, Dr. Chand is not treating the claimant's pain. The claimant alleges that she is afraid to proceed with hip replacement surgery due to the pandemic and fear of catching COVID, yet she has had a number of other surgical procedures, including radiofrequency ablations, during the pandemic. She also had a consult for gastric sleeve in October 2020 during the pandemic (Exhibit 17F). As noted above, she has also reported considerable benefit from medications and radial frequency ablations, without side effects. Also as noted above, her examinations show some abnormal gait at times and a positive FABER test, *but the majority of her*

5                                                                          24-204

> *examinations do not demonstrate significant deficits* and her EMG is negative (see previous discussion). The claimant asserted significant fatigue during the hearing but there are no ongoing reports of this in the record or consistent presentations in distress.

Even so, Ms. Macina challenges the ALJ's consistency and supportability findings. The ALJ's assessment is that, while Ms. Macina's condition is severe, she is not significantly physically limited, and her pain is well-managed by her current medications.

The limitations Dr. Chand found were inconsistent with the rest of the medical record. Dr. Chand found that her patient could never stoop, never crouch, and only occasionally climb stairs. She described abnormal gait and a positive FABER test.[2] Other parts of Ms. Macina's medical record do not show nearly the same physical limitations. Two doctors found a negative FABER test. Other reports describe her normal gait. She is often described as having normal muscle tone and motor control. She usually had normal strength and no sign of muscle wasting or atrophy. The ALJ had sufficient evidence to conclude that Dr. Chand's limitations were "overly restrictive."

Dr. Chand described Ms. Macina's pain as so severe that she would struggle to concentrate, but the record suggests her pain is well-managed by her current

---

[2] A test where a doctor applies pressure to the knee while the hip is flexed abducted and externally rotated (FABER) to test for pain.

medications. Ms. Macina always reports a 50% relief because of pain medications and a corresponding increase in mood and quality of life. As recently as November 23, 2021, roughly two weeks before Dr. Chand's questionnaire, she reported "no significant change in the quality, quantity or location of pain since our last visit." Still, she requested and received an increase in her pain prescription. "Most importantly," the ALJ found that Ms. Macina's pain is well-managed, so she has enough residual functional capacity to work. Substantial evidence supports the effectiveness of Ms. Macina's medication.

The ALJ found that the pain and limitation Dr. Chand described was incompatible with Ms. Macina's choice to continue with conservative treatments. Ms. Macina claims that pain medication and epidural injections are not conservative treatments and string cites cases from this and other courts to prove it. No doubt, the treatments applied here are not always conservative, but in this case, they are the conservative option to surgery. Her doctors say so. The less conservative alternative is hip replacement surgery.[3] Whether a treatment is conservative is an assessment relative to the affliction and other available treatments. We agree that pain management rather than surgery is conservative

---

[3] Ms. Macina seems to suggest that she only chose non-surgical treatments because of COVID-19. This argument is undercut by the other treatments she received. She obtained a consultation for gastric sleeve surgery and had radiofrequency ablations performed despite her fears.

treatment and choosing conservative treatment clashes with the limitations Dr. Chand describes.

The ALJ correctly measured Dr. Chand's opinion against the two most important factors—consistency and supportability. *See Woods*, 32 F.4th at 791. The ALJ explained why the physical limitations Dr. Chand suggested were not consistent with the rest of the medical record, why the pain Dr. Chand described was not supported by Ms. Macina's medication's effectiveness, and why the overall conclusion was not consistent with Ms. Macina's choice to continue conservative treatment. That conclusion is supported by substantial evidence.

Since the ALJ properly ruled that Dr. Chand's opinion was not supported by or consistent with the medical record, she need not further explain why she favored Dr. Bui's and Dr. Kaur's reports. Ms. Macina concedes in her brief "[o]nly where medical opinions are 'equally well-supported and consistent' and disagree on an issue, the ALJ must articulate her consideration of the relationship factors."

We **AFFIRM**.