**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| JEREMY DEAN KITCHEN, | No. 22-35581 |
| *Plaintiff-Appellant*, | D.C. No. |
| v. | 2:21-cv-00602-SI |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | OPINION |
| *Defendant-Appellee*. | |

Appeal from the United States District Court
for the District of Oregon
Michael H. Simon, District Judge, Presiding

Submitted June 16, 2023[*]
Portland, Oregon

Filed September 14, 2023

Before: Richard C. Tallman and Johnnie B. Rawlinson, Circuit Judges, and Jed S. Rakoff,[**] District Judge.

Opinion by Judge Rawlinson

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[**] The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

## SUMMARY[***]

### Social Security

The panel affirmed the district court's order affirming the denial of claimant's application for disability insurance benefits under the Social Security Act.

On appeal, claimant challenged only the administrative law judge (ALJ)'s finding that his mental impairments were not disabling.

The panel held that the ALJ did not err in excluding claimant's VA disability rating from her analysis. *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (holding that an ALJ is required to address the Veterans Administration disability rating), is no longer good law for claims filed after March 27, 2017, the effective date of the Social Security Administration's revised regulations regarding the evaluation of medical evidence. The 2017 regulations removed any requirement for an ALJ to discuss another agency's rating.

The panel held that the ALJ gave specific, clear, and convincing reasons for rejecting claimant's testimony about the severity of his symptoms by enumerating the objective evidence that undermined claimant's testimony.

The panel rejected claimant's contention that the ALJ erred by rejecting the opinions of Drs. Condon and Adams. First, claimant's contention that the ALJ's residual functional capacity (RFC) finding was inconsistent with Dr.

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Condon's opinion lacked merit. Second, under the revised regulations, the ALJ need only provide an explanation supported by substantial evidence, and substantial evidence supported the ALJ's finding that Dr. Adams' opinion regarding claimant's mental impairments was not persuasive.

The panel held that substantial evidence supported the ALJ's conclusion that claimant's mental impairments did not meet all of the specified medical criteria or equal the severity of a listed impairment because substantial evidence supported the ALJ's determination that Dr. Adams' opinion was unpersuasive.

Finally, because the panel concluded that the ALJ properly weighed Dr. Adams' opinion and included Dr. Condon's limitations in the RFC, claimant did not show that the ALJ's resulting hypothetical posed to the vocational expert was incomplete.

**COUNSEL**

Chad Hatfield, Hatfield Law PLLC, Kennewick, Washington, for Plaintiff-Appellant.

Joseph J. Langkamer, Assistant Regional Counsel, Office of the General Counsel, Office of Program Litigation, Social Security Administration, Baltimore, Maryland; Matthew W. Pile, Associate General Counsel, Office of Program Litigation; Social Security Administration, Office of the General Counsel, Seattle, Washington; Renata Gowie, Civil Division Chief; Natalie K. Wight, United States Attorney; United States Department of Justice, Seattle, Washington; Kevin C. Danielson, Assistant United States Attorney, United States Department of Justice, United States Attorney's Office, Portland, Oregon; for Defendant-Appellee.

**OPINION**

RAWLINSON, Circuit Judge:

Jeremy Dean Kitchen (Kitchen) appeals the district court's order affirming the denial of Kitchen's application for disability insurance benefits under the Social Security Act. We have jurisdiction pursuant to 28 U.S.C. § 1291. Because substantial evidence supports the Administrative Law Judge's (ALJ) decision that Kitchen was not disabled, we affirm.

## I. **BACKGROUND**

Kitchen enlisted in the Oregon Army National Guard in 1999. A few years later, he was deployed to Iraq as a medic

and sustained an injury to his right knee from an Improvised Explosive Device (IED). He also experienced emotional distress following this incident.

Upon returning to civilian life, Kitchen held several jobs in the medical field, and sought treatment for his injuries through the United States Department of Veterans Affairs (VA). At that time, the VA found no significant abnormalities relating to Kitchen's knee, but noted that Kitchen continued to struggle with Post Traumatic Stress Disorder (PTSD), nightmares, irritability, depression, avoidance of crowds, panic attacks, and insomnia. However, in 2015, the VA concluded that Kitchen was 70 percent disabled from PTSD, 10 percent disabled from synovitis,[1] and 10 percent disabled from limited knee flexion, for an overall disability rating of 80 percent.

In 2018, Kitchen underwent a consultative examination from Dr. Michael Anderson, an independent medical examiner, who recorded that Kitchen had regained full "[r]ange of motion" in his knee and that his knee was "completely normal." Kitchen was also referred to Dr. Stephen Condon for a psychological evaluation. Dr. Condon observed that Kitchen had issues with concentration and memory, noting that "his cognitive functioning might be mildly impaired" and his inability to interact with others "appears to be mildly or markedly impaired." Less than a year later, Dr. Condon reexamined Kitchen and reached similar conclusions.

---

[1] "Synovitis" is "[i]nflammation of a synovial membrane, especially that of a joint; in general, when unqualified, the same as arthritis." *Stedman's Medical Dictionary*, 891270 (Online ed. 2014).

Kitchen sought further treatment from the VA and reported some improvement, including that his pain was zero on a scale of zero to ten, and that his mood, sleep, and irritability had improved with medication. But on a subsequent Mental Residual Function Capacity Form, Dr. Stephen Adams rated Kitchen as "markedly," "severely," or "extremely" limited in the ability to: "remember locations and work-like procedures;" "understand and remember very short and simple instructions;" "understand and remember detailed instructions;" "carry out very short simple instruction[s];" "carry out detailed instructions;" "maintain attention and concentration for extended periods;" "perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances;" "sustain an ordinary routine without special supervision;" "work in coordination with or proximity to others without being distracted by them;" "make simple work-related decisions;" "complete a normal work-day and workweek;" "interact appropriately with the general public;" "accept instructions and respond appropriately to criticism from supervisors;" "respond appropriately to changes in the work setting;" "travel in unfamiliar places or use public transportation;" "set realistic goals or make plans independently of others;" "understand, remember, or apply information;" interact with others;" "concentrate, persist, or maintain pace;" and "adapt or manage oneself."

Kitchen applied for disability insurance benefits on January 30, 2020, alleging disability since March 1, 2017,[2] due to PTSD, depression, anxiety, insomnia, headaches, and

---

[2] Kitchen previously filed applications for disability insurance benefits in 2017, 2018, and 2019. All three applications were denied.

a right knee injury. His application was denied initially and upon reconsideration.

At his hearing before the ALJ, Kitchen testified that trauma-based therapy was causing his mental health to decline, specifically causing "nightmares, flashbacks, [and] anxiety." He related that his symptoms affected his marital relationship and that he was fired from his most recent job due to his volatile personality and memory lapses. Kitchen also submitted function reports he prepared, reflecting that he neglects his personal hygiene, has severe knee pain, is irritable, has a hard time concentrating, and isolates himself socially.

A medical expert confirmed Dr. Condon's assessment that Kitchen would be markedly limited when interacting with others. The medical expert suggested that Kitchen's Residual Function Capacity (RFC) include "some limitations in terms of his work situation." He observed that Kitchen "should not have any contact with the public," "[h]e should not be required to work in a close teamwork setting with other people," and that "he would need a [] normal range of supervision." On cross-examination, the medical expert noted that Kitchen was "doing very well" or "above average" "in terms of memory, concentration, persistence and pace."

Finally, a vocational expert (VE) testified that a hypothetical person with Kitchen's mental RFC [3] would not be able to perform Kitchen's past work because his past jobs

---

[3] The ALJ stated Kitchen's RFC as the "ability to understand, remember, or apply. . . simple and routine" information, no close interaction with others, "ability to concentrate, persist, and maintain pace at the [Specific Vocational Preparation] 2 level," and "an environment that is routine and predictable."

were skilled and he was now limited to unskilled work. The VE stated that the hypothetical person would be able to work as a small product assembler, marker, or an electronics worker.

After considering and weighing the evidence, the ALJ applied the five-step sequential evaluation for determining disability. *See* 20 C.F.R. § 404.1520(a). At the first step, the ALJ found that Kitchen had not engaged in substantial, gainful activity. At the second step, the ALJ determined that Kitchen had severe impairments of PTSD; depression; anxiety disorder; insomnia; Baker cyst, right knee; occasional headaches; and obesity. At the third step, the ALJ concluded that these impairments did not meet or equal a listed impairment.

At the fourth step, the ALJ concluded that Kitchen had the mental RFC to perform light work, with the limitations of remembering or applying information that is simple and routine, and working in an environment with no close cooperation (i.e., teamwork), with co-workers and supervisors, or the public.

In reaching this decision, the ALJ rejected the opinion of Dr. Adams, reasoning that his assessment of the existence of "disabling mental work-related limitations" was inconsistent with the medical record and with Dr. Adams' "own unremarkable mental status examinations." The ALJ also noted that Dr. Adams used a "check box form" that contained "very little meaningful information."

At the fifth step, the ALJ considered the response of the VE to the hypothetical posed by the ALJ based on Kitchen's RFC. The VE opined that there were a significant number of jobs in the national economy that a person with Kitchen's RFC could perform.

Once the Appeals Council denied review of the ALJ's decision, Kitchen sought judicial review. The district court affirmed the agency's denial of benefits.

On appeal, Kitchen only challenges the ALJ's finding that Kitchen's mental impairments were not disabling. Kitchen specifically contends that the ALJ improperly (1) failed to consider the VA's disability rating; (2) discounted Kitchen's testimony; (3) rejected Drs. Condon's and Adams' opinions; (4) decided that Kitchen's mental impairments did not meet or medically equal a listing; and (5) relied on the VE's response to an incomplete hypothetical.

## II. **STANDARD OF REVIEW**

"We review the district court's order affirming the ALJ's denial of social security benefits de novo and will disturb the denial of benefits only if the decision contains legal error or is not supported by substantial evidence." *Lambert v. Saul*, 980 F.3d 1266, 1270 (9th Cir. 2020) (citation and internal quotation marks omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance. . . ." *Rounds v. Comm'r*, 807 F.3d 996, 1002 (9th Cir. 2015), *as amended* (citation and internal quotation marks omitted). "Overall, the standard of review is highly deferential." *Id.* (citation and internal quotation marks omitted).

## III. **DISCUSSION**

### A. **VA Disability Rating**

Kitchen filed his application on January 30, 2020, after the March 27, 2017, effective date of the Social Security Administration's revised regulations regarding the evaluation of medical evidence. *See* 20 C.F.R. § 404.1520c

(2017). The 2017 regulations provide that "[d]ecisions by other governmental agencies," including the VA, are "inherently neither valuable or persuasive," and thus, an ALJ is not required to include any analysis about "a decision made by any other governmental agency." §§ 404.1504, 404.1520b(c)(1).

Kitchen relies on *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002), to support his contention that the ALJ was required to address the VA disability rating. But Kitchen fails to explain why we should not give effect to the new regulations, beyond saying (1) we have the power to "determine the law" under Article III and (2) *McCartey* has not been overruled. Kitchen does not argue that the new regulations are inconsistent with the Social Security Act.

The Commissioner counters that *McCartey* is no longer good law for claims filed after March 27, 2017. We agree.

*McCartey* is binding unless its "'reasoning or theory is clearly irreconcilable with the reasoning or theory of intervening higher authority,' which in this case is the agency's updated regulations." *Woods v. Kijakazi*, 32 F.4th 785, 790 (9th Cir. 2022) (quoting *Lambert v. Saul*, 980 F.3d 1266, 1274 (9th Cir. 2020) (alteration omitted). *McCartey* gave several reasons for requiring that the ALJ give "great weight" to a VA disability determination: (1) nine other circuit courts to consider the issue had required that the VA rating be given at least some weight; (2) the regulations said only that another agency's determination was not binding on Social Security; and (3) there was a "marked similarity" between the VA's disability program and Social Security's disability program. *McCartey*, 298 F.3d at 1075–76.

*McCartey*'s theory and reasoning is clearly irreconcilable with the revised regulations. First, as

discussed, the regulations now explicitly state that Social Security "will not provide any analysis in [its] determination or decision about a decision made by any other governmental agency," § 404.1504, and that such decisions are "inherently neither valuable nor persuasive." § 404.1520b(c)(1). Second, when revising the regulations, the Commissioner cited research which undermines *McCartey*'s logic about the "similarities" between the two disability programs. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5849 (Jan. 18, 2017) ("While individuals with a VA rating of 100% or [Individual Unemployability] have a slightly higher allowance rate under our programs than members of the general population, nearly one-third are denied benefits based on our rules . . ."). Finally, the only other circuit court to have considered the 2017 rules concluded they supersede that circuit's precedent requiring deference to VA determinations. *See Rogers v. Kijakazi*, 62 F.4th 872, 879–80 (4th Cir. 2023).

"The Social Security Act provides no guidance as to how the agency should evaluate medical evidence. . . ." *Woods*, 32 F.4th at 790. Rather, the Act gives the Commissioner "wide latitude" to promulgate "regulations governing 'the nature and extent of the proofs and evidence to establish the right to benefits.'" *Id.* (quoting 42 U.S.C. § 405(a) (alteration omitted)). Kitchen does not contend that the Commissioner has exceeded that latitude. Put simply, the 2017 regulations removed any requirement for an ALJ to discuss another agency's rating. Thus, it was not error for the ALJ to exclude Kitchen's VA disability rating from her analysis. *See id.*

**B.  Kitchen's Testimony**

"When objective medical evidence is inconsistent with a claimant's subjective testimony, an ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear, and convincing reasons for doing so. . . ." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (citation and internal quotation marks omitted).  Here, the ALJ summarized Kitchen's symptom testimony, which included Kitchen's reports of anxiety, irritability, anger, and panic attacks.  But the ALJ concluded that Kitchen's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."

The ALJ reasoned that most of Kitchen's physicians opined that his mental impairments were "mild[]" or "moderate," rather than disabling.  *See Carmickle v. Comm'r*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony. . . .") (citation omitted).  The ALJ also noted that Kitchen experienced "a gradual improvement in his functioning with prescribed medication and psychotherapy sessions."  *See Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purposes of determining eligibility for SSI benefits.").  Thus, the ALJ's explanation was "specific, clear and convincing," as it enumerated the objective evidence that "undermine[d] [Kitchen's] testimony." *Treichler v. Comm'r*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citations omitted).

## C.  Medical Opinion Evidence

"[U]nder the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792. "The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source, and explain how it considered the supportability and consistency factors in reaching these findings." *Id.* (citations, alterations, and internal quotation marks omitted). Supportability concerns how "a medical source supports a medical opinion" with relevant evidence, while consistency concerns how "a medical opinion is consistent with the evidence from other medical and nonmedical sources." *Id.* at 791–92 (citations, alteration, and internal quotation marks omitted). There is no longer a hierarchy of medical opinions that determines how the opinions are weighed. *See id.* at 792.

Kitchen argues that the ALJ committed reversible error by rejecting the opinions of Drs. Condon and Adams that support a finding of disability. Kitchen also asserts that the ALJ failed to assess the consistency and supportability of each medical opinion.[4]

### 1.  Dr. Condon's Opinion

Kitchen contends that the ALJ issued an RFC assessment in conflict with Dr. Condon's findings without adequate explanation. Dr. Condon determined that "[i]t is likely that [Kitchen] would have. . . marked interpersonal problems in

---

[4] This argument is belied by the record. The ALJ explicitly discussed the supportability and consistency of the opinions of Drs. Condon and Adams by identifying medical sources and records relevant to her analysis. *See Woods*, 32 F.4th at 791–92.

an employment situation."  And the RFC limitations found by the ALJ were consistent with Dr. Condon's assessments.

Specifically, the ALJ limited Kitchen to working in an environment that does not require "close cooperation . . . with co-workers and supervisors."  The ALJ also found that Kitchen "must work away from the public."   These limitations restrict Kitchen to minimal interaction with others and track Dr. Condon's opinion that Kitchen was "mildly or markedly impaired" in terms of "[i]nteracting appropriately with others." *See Turner v. Comm'r*, 613 F.3d 1217, 1223 (9th Cir. 2010) (approving the ALJ's incorporation of the physician's assessment into the RFC). Kitchen's contention that the RFC finding was inconsistent with Dr. Condon's opinion lacks merit.

### 2.  Dr. Adams' Opinion

Contrary to Kitchen's assertion, the ALJ's weighing of Dr. Adams' opinion was sufficiently articulated.  Our prior standard, that an ALJ "provide specific and legitimate reasons for rejecting a treating or examining doctor's opinion," is "incompatible with the revised regulations" addressing the weighing of medical opinions without "special deference to the opinions of treating and examining physicians." *Woods*, 32 F.4th at 792; *see also* § 404.1520c (2017).  Under the revised regulations, an ALJ need only provide "an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

Substantial evidence supports the ALJ's finding that Dr. Adams' opinion regarding Kitchen's mental impairments was not persuasive.  The ALJ reasoned that Dr. Adams' assessment of severe limitations was inconsistent with the medical record and with Dr. Adams' "own unremarkable mental status examinations." *See Tommasetti v. Astrue*, 533

F.3d 1035, 1041 (9th Cir. 2008) (holding that an ALJ may discount a doctor's opinions that are inconsistent with or unsupported by the doctor's own clinical findings). The ALJ pointed to Dr. Adams' observation that Kitchen was engaged, alert and oriented, and only "slightly anxious." The ALJ also noted the medical expert's testimony that Dr. Adams' "objective observations during office visits counter the extremeness of Dr. Adams' evaluation." Finally, we have accepted the discounting of a medical opinion set forth in a checkbox form with little to no explanation. *See Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) (explaining that an ALJ "may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions") (citation omitted).

## D. Listed Impairments

"The listings describe impairments that are considered to be severe enough to prevent an individual from doing any gainful activity." *Id.* at 1148 (citation and internal quotation marks omitted). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Id.* "If an impairment does not meet a listing, it may nevertheless be medically equivalent to a listed impairment if the claimant's symptoms, signs, and laboratory findings are at least equal in severity to those of a listed impairment. *Id.* (citation, footnote reference, and internal quotation marks omitted). "If a claimant's impairments meet or equal the criteria of a listing, the claimant is considered disabled." *Id.* at 1149.

Kitchen argues that the ALJ failed to properly consider the "paragraph C" [5] criteria by reporting findings that were inconsistent with Dr. Adams' opinion. But his challenge fails because substantial evidence supports the ALJ's determination that Dr. Adams' opinion was unpersuasive.

"To satisfy the paragraph C criteria, [a claimant's] mental disorder must be 'serious and persistent'; that is, there must be a medically documented history of the existence of the disorder over a period of at least 2 years." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A(2)(c). Additionally, the criteria "is satisfied when the evidence shows that [the claimant] rel[ies], on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of [his] mental disorder." § 12.00G(2)(b). Finally, the criteria is satisfied when "the evidence shows that, despite [the claimant's] diminished symptoms and signs, [he] has achieved only marginal adjustment." [6] § 12.00G(2)(c).

The ALJ determined that Kitchen failed to satisfy the paragraph C criteria sufficiently to meet or equal listings

---

[5] Kitchen's reference is to 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A(2)(c), (paragraph C), which describes the criteria used to evaluate "serious and persistent mental disorders."

[6] "Marginal adjustment" means that [the claimant's] adaptation to the requirements of daily life is fragile; that is, [the claimant] ha[s] minimal capacity to adapt to changes in [the claimant's] environment or to demands that are not already part of [the claimant's] daily life." § 12.00G(2)(c).

12.04,[7] 12.06,[8] or 12.15.[9]  The ALJ explained that the "record d[id] not establish that [Kitchen] ha[d] only marginal adjustment."  The ALJ also reasoned that Kitchen "has intermittently received psychotherapy, and he has responded well to medication."  The ALJ referenced VA records indicating that on February 3, 2020, Kitchen had returned to psychotherapy "for the first time" since December 13, 2017, besides "two additional [follow-ups]." Additionally, the ALJ pointed out that Kitchen's reports of "deterioration in his self-care, hygiene, and grooming" were contradicted by objective evidence.  Thus, substantial evidence supports the ALJ's conclusion that Kitchen's mental impairments did not "meet *all* of the specified medical criteria" or "equal [the] severity" of a listed impairment.  *Ford*, 950 F.3d at 1148.

### E.  VE Testimony

Finally, Kitchen contends that the ALJ erred at step five by relying on the VE's response to an incomplete hypothetical.  Kitchen faults the ALJ for not including further limitations in the RFC based on "the disabling opinions" from Kitchen's "examining psychologist and treating physician."

"If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the [VE's] testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Bray v. Comm'r*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citation and internal quotation marks omitted).  But, an ALJ "is free to accept or reject restrictions in a hypothetical question that are not

---

[7] Depressive, bipolar and related disorders.  *See* § 12.00B(3).

[8] Anxiety and obsessive-compulsive disorders.  *See* § 12.00B(5).

[9] Trauma- and stressor-related disorders.  *See* § 12.00B(11).

supported by substantial evidence." *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006) (citation omitted).

Kitchen's argument is a restatement of his contention that the ALJ should have credited Dr. Adams' opinion and completely adopted Dr. Condon's assessment. Because we have already concluded that the ALJ properly weighed Dr. Adams' opinion and included Dr. Condon's limitations in the RFC, Kitchen has not shown that the ALJ's resulting hypothetical was incomplete. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175–76 (9th Cir. 2008) (rejecting a similar argument by the claimant in that case).

**AFFIRMED.**