NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MAR 31 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

---

MICHAEL D. SALISBURY,

      Plaintiff - Appellant,

  v.

LELAND DUDEK[*], Acting Commissioner
of Social Security,

      Defendant - Appellee.

No. 24-425

D.C. No.
3:20-cv-01876-MO

MEMORANDUM[**]

---

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, United States District Judge, Presiding

Submitted March 27, 2025[***]
Pasadena, California

---

[*] Leland Dudek is substituted for his predecessor Martin O'Malley, Commissioner of the Social Security Administration, as Acting Commissioner of the Social Security Administration, pursuant to Federal Rule of Appellate Procedure 43(c)(2).

[**] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[***] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Before: BOGGS****, FRIEDLAND, and BRESS, Circuit Judges.

Michael Salisbury filed for Disability Insurance Benefits in 2016, alleging post-traumatic stress disorder ("PTSD"), depression, and traumatic brain injury. In 2020, an administrative law judge ("ALJ") denied his claim, finding him not disabled. The district court affirmed, and Salisbury appealed. We have jurisdiction under 28 U.S.C. § 1291. On review, we may reverse only if the ALJ committed legal error or if her factual findings were unsupported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022). We affirm.

1.     Salisbury first argues that the ALJ legally erred in giving only "some" weight to a disability rating from the U.S. Department of Veterans Affairs ("VA") in the course of assessing his residual functional capacity. The VA gave Salisbury a total disability rating of 100%, based on a finding of combined PTSD and migraines. Under the rules in effect when Salisbury applied for benefits, the ALJ could give less weight to a VA disability rating if she offered "persuasive, specific, valid reasons[.]" *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).[1]

Here, the ALJ satisfied that standard by identifying conflicts between the

____

**** The Honorable Danny J. Boggs, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

[1] We have since abandoned the *McCartey* standard for benefits applications filed under the Social Security Administration's amended rules, which took effect in 2017. *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023). However, *McCartey* still governs applications filed before March 27, 2017. *See ibid.*

VA's rating and other evidence. *See Berry v. Astrue*, 622 F.3d 1228, 1236 (9th Cir. 2010) (affirming the ALJ's rejection of the VA's rating because she "reviewed in detail medical records" and identified inconsistencies). For one, although its rating suggested that Salisbury was totally disabled, the VA acknowledged that Salisbury's PTSD was expected to improve and that its testing of him revealed normal cognition. Although the VA asserted that Salisbury would have difficulty in a work setting, the ALJ found that he had consistently displayed a cooperative mood and ably handled substantial housework as a stay-at-home parent. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693, 695 (9th Cir. 2009) (affirming the ALJ's decision where information about the claimant's domestic life and non-work activities "undermined" the VA's rating). And Salisbury's symptoms never required hospitalization and were apparently manageable with a conservative treatment plan and moderate medication. *See Smartt v. Kijakazi*, 53 F.4th 489, 500 (9th Cir. 2022).

2.      In weighing the evidence, the ALJ gave "significant weight" to the opinion of Marc Stuckey, Psy.D. However, Salisbury argues the ALJ erred by rejecting discrete portions of the opinion, which stated that Salisbury suffered from "marked" limitations in his ability to respond appropriately to workplace situations and changes in routine. An ALJ may reject a treating physician's medical opinion that is contradicted by other evidence in the record if the ALJ cites "specific and legitimate reasons" for doing so that are "supported by substantial evidence in the

record." *Ford v. Saul*, 950 F.3d 1141, 1154–55 (9th Cir. 2020).[2]

The ALJ gave specific and legitimate reasons for partially rejecting Dr. Stuckey's opinion. The ALJ stated that Dr. Stuckey failed to fully explain those conclusions that the ALJ rejected. *See* 20 C.F.R. § 404.1527(c)(3); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). And the ALJ also identified instances in which Dr. Stuckey's opinion conflicted with parts of the record concerning Salisbury's daily activities. *See* 20 C.F.R. § 404.1527(c)(4); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Salisbury also disputes the ALJ's treatment of the opinion of Licensed Clinical Social Worker Candis Sollars, who stated that Salisbury could not sustain focus or maintain a routine. The ALJ gave this opinion only "some weight." As a non-physician, Ms. Sollars is entitled to less deference, and the ALJ correctly offered "germane" reasons for rejecting her opinion. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010). The ALJ noted that Ms. Sollars provided little explanation for her assessment of Salisbury's limitations. *See* 20 C.F.R. § 404.1527(c)(3). And the ALJ noted inconsistencies between Ms. Sollars's opinion and the medical record, including with the results of objective tests and her own treatment notes. *See id.* § 404.1527(c)(4); *Britton v. Colvin*, 787 F.3d 1011, 1013

---

[2] This court has since abandoned the "specific and legitimate reasons" standard for rejecting medical opinions, for applications filed after March 27, 2017. *Woods*, 32 F.4th at 789–90.

(9th Cir. 2015).

3.     Salisbury disputes the ALJ's assessment of his subjective symptom testimony. Because Salisbury came forward with objective medical evidence of an impairment that could produce his symptoms, the ALJ was required to give "clear and convincing reasons" that are supported by substantial evidence in the record before rejecting his testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). Put differently, the ALJ needed to identify the portions of Salisbury's testimony she found not credible and to explain the evidence that undermined it. *Ibid.*

The ALJ identified several such convincing reasons that are supported by substantial evidence in the record. She noted "significant inconsistencies" between portions of Salisbury's testimony and the objective medical evidence, such as multiple examinations where Salisbury demonstrated fully intact attention and memory, and treatment notes through 2020 reflecting "relatively good day-to-day functioning." *See* 20 C.F.R. § 404.1529(c)(2); *Smartt*, 53 F.4th at 498. She explained that his failure to use prescribed medications for a longer trial period was inconsistent with the alleged severity of his symptoms. *See* 20 C.F.R. § 404.1530(c). She pointed out that his daily activity levels were inconsistent with his claimed impairments. *See Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021). And finally, the ALJ relied on "ordinary techniques of credibility evaluation" by highlighting

other pieces of Salisbury's testimony that contradicted his purported symptoms. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (quoting *Fair v. Bowen*, 885 F.2d 597, 604 n.5 (9th Cir. 1989)).

4.      The ALJ also gave little weight to similar symptom testimony from a lay witness, Salisbury's wife Angela. Salisbury argues this was error, but the ALJ only needed to give "germane" reasons for rejecting lay-witness testimony. *Valentine*, 574 F.3d at 694. Here, the ALJ satisfied that standard. As with Salisbury himself, the ALJ identified conflicts between Angela's testimony and specific medical evidence, as well as evidence about Salisbury's daily life. *See Bayliss*, 427 F.3d at 1218. As we have previously held, where, as here, an ALJ provides clear and convincing reasons to reject a benefits claimant's symptom testimony, it follows that those reasons are also "germane" grounds for rejecting a lay witness's testimony on the same symptoms. *Valentine*, 574 F.3d at 694.

5.      Finally, Salisbury disputes the ALJ's reliance on a vocational expert's testimony. After determining Salisbury's residual functional capacity, the vocational expert testified that a person with Salisbury's age, education, work experience, and residual functional capacity could hypothetically perform some of Salisbury's past relevant work, or other jobs existing in the national economy. Salisbury claims that because the ALJ erred in determining his residual functional capacity, she also erred in relying on this hypothetical. However, because the ALJ did not err in her prior

analysis, Salisbury's "restatement" of his other arguments fails. *Kitchen*, 82 F.4th at 742.

**AFFIRMED.**